IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02888-MEH

G.B.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 1381–83c. Jurisdiction is proper under 42 U.S.C. § 405(g).

    The parties have consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C.§ 636 and D.C.Colo.LCivR 72.2. ECF 7. The parties have not requested oral argument, and the Court finds it would not materially assist in the appeal's determination. The Court finds the Administrative Law Judge ("ALJ") did not err when she formulated her residual functional capacity ("RFC"). In addition, the ALJ appropriately considered and evaluated the opinions of the medical providers, and the final decision is supported by substantial evidence in the record. Accordingly, the Court affirms the ALJ's decision that Plaintiff was not disabled from November 15, 2019 through the date of the decision.

## BACKGROUND

Plaintiff was fifty-five years old on the alleged onset date.  Social Security Administrative Record filed December 30, 2022, ECF 6 ("AR") at 61.  She alleges she became disabled on November 15, 2019 due to necrotizing pancreatitis and hypothyroidism. AR 61.

On October 20, 2020, the SSA initially denied her application for DIB and upon reconsideration on November 30, 2020.  AR 87, 92. After a hearing on January 13, 2022, AR 31-58, the ALJ issued an unfavorable decision dated March 18, 2022.  AR 12-29.  Plaintiff requested a review by the Appeals Council, which denied Plaintiff's request for review on September 20, 2022, making the ALJ's decision the final agency decision.  AR 1-6. *See* 20 C.F.R. §404.981.  Plaintiff timely appealed to this Court.  ECF No. 1.

In her decision, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 15, 2019. AR 18. The ALJ found Plaintiff had the following severe impairments: acute episode of necrotizing pancreatitis; chronic idiopathic pancreatitis; hypothyroidism; history of Gardner's Syndrome, status post colectomy with ileostomy; ampullary adenoma, status post-ampullectomy; depression and cognitive disorder.  AR 18, 20 C.F.R § 404.1520(c).  Plaintiff alleged additional impairments of Type 2 diabetes and osteoporosis, which the ALJ found (when considered singly or together) have caused only transient and mild symptoms and limitations, were well controlled with treatment, did not met the twelve-month-durational requirement, or were otherwise not adequately supported by the medical evidence in the record. Accordingly, the ALJ found these alleged impairments do not constitute severe medically determinable impairments.  AR 18; 20 C.F.R. § 404.1545.

The ALJ found no impairment or combination of impairments met or medically equaled a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525

and 404.1526. AR 18. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except:

> the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot use moving, hazardous machinery or have exposure to unprotected heights. *The claimant can understand, remember, and carry out instructions that can be learned in up to and including 6 months of on the job training and can keep pace sufficient to complete tasks and meet quotas typically found in this level of work.*

AR 20 (emphasis added). The ALJ determined Plaintiff was able to perform her past relevant work as a retail customer service representative, sedentary as listed and performed. AR 25. She therefore did not proceed to Step Five and found Plaintiff not disabled. AR 25.

At the hearing held before the ALJ, Plaintiff and a vocational expert ("VE") testified. Plaintiff testified that she has had an ileostoma since 1980. AR 38. Plaintiff reported she felt better since hospitalization in 2019 but has good days and bad days. AR 39. She complained about her ongoing difficulty with her cognitive skills, including short term memory loss and difficulty paying attention. AR 39. She was no longer using a walker but did still get dizzy. AR 39. She could pay attention for five to ten minutes yet struggled to recall information. AR 41. She described working with the speech therapist to improve her cognitive condition. AR 42. She used a whiteboard and a planner at home to assist her memory and struggled to take in verbal and written information. AR 43. She has been told that the medications used in 2019 to induce her coma may have caused this decline. AR 44. She struggles to find words and to concentrate with distractions present and needs a quiet room. AR 45. She cannot multitask. AR 45.

Plaintiff further testified that she cannot lift more than twenty pounds. AR 46. She also experiences migraines, which cause her to go to a dark room, cover her head and take medication.

3

AR 47. Her migraines last anywhere from twenty-four to forty-eight hours. AR 47. She asked her former employer for accommodations after her medical issues in 2019 but they were unable to continue her employment in a reduced capacity. AR 48. She does still drive but gets lost and makes wrong turns. AR 49.

VE Dennis Duffin testified that a person with the Plaintiff's background and limitations would be able to return to Plaintiff's past work as a customer service representative. AR 53-54. When the hypothetical was revised such that the claimant would be limited to a job that could be learned with a maximum of thirty days on the job training, he testified Plaintiff's past work would be eliminated. He also testified that Plaintiff had no transferable skills at the light level. AR 55. He testified that an employee who is off task twenty percent of the time or absent three days per month would not be employable. AR 55. He described Plaintiff's past work environment as a call center with a number of people on headsets with microphones and at computer screens. AR 56. He noted that some call centers take place in cubicles, but others are wide open workspaces. AR 56. He noted that a request for an isolated or quiet room would be considered an accommodation. AR 56. He also testified that an individual limited to verbal input for no more than twenty-five percent of their day could not perform the job of retail customer service representative. AR 57.

## LEGAL STANDARDS

### SSA's Five-Step Process for Determining Disability

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

4

of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity. If she is, she is not disabled. *See* 20 C.F.R. § 404.1520. Step Two analyzes whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. *See id.* Step Three analyzes whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment is listed or is equivalent to a listed impairment, she is presumed to be disabled. If the impairment does not satisfy Step Three, the ALJ must proceed to Step Four, which requires the claimant to show that her impairment(s) and RFC prevent her from performing work that she has performed in the past. If the claimant is capable of performing her previous work, either as she performed it or as it is generally performed in the national economy, she is not disabled. *See* 20 C.F.R. § 404.1520(e), (f); *see also Dumas v. Colvin*, 585 F. App'x 958, 960 (10th Cir. 2014) ("Claimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy." (quoting *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993))). However, if the claimant establishes a prima facie case of disability based on the previous four steps, the analysis proceeds to Step Five, where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

5

**Standard of Review**

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)). "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey,* 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom.  If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).  The Court, however, may not reweigh the evidence nor substitute its judgment for that of the ALJ.  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## ALJ'S RULING

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 15, 2019, the alleged onset date.  AR 18.  At Step Two, the ALJ determined

that Plaintiff had severe impairments of acute episode of necrotizing pancreatitis; chronic idiopathic pancreatitis; hypothyroidism; history of Gardner's Syndrome, status post colectomy with ileostomy; ampullary adenoma, status post ampullectomy; and depression and cognitive disorder, which impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. AR 18, *citing* 20 C.F.R. § 404.1520(c).

Moving to Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  AR 18.  The impairments considered included Listings 5 (digestive system), 9 (endocrine disorders), 12.02 (neurocognitive disorder), 12.04 (depressive, bipolar, and related disorders), and 13 (cancer/malignant neoplastic diseases).

With respect to the alleged mental impairments, at issue herein, listings 12.02 and 12.04 "have three paragraphs, designated A, B, and C; [a claimant's] mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A2. Paragraph A includes the medical criteria that must be present in the medical evidence. *Id.* § 12.00A2a. Paragraph B provides functional criteria to evaluate how a claimant's mental disorder limits her functioning. *Id.* § 12.00A2b.  Paragraph C provides criteria the agency uses to evaluate "serious and persistent mental disorders." *Id*. § 12.00A2c.

To satisfy the Paragraph B criteria, a claimant must demonstrate that her mental disorder results in extreme limitation in one, or marked limitation in two of four areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A2b. With respect to the severity of her mental impairments, the ALJ found the following.  In understanding, remembering or applying information and concentrating,

7

persisting, or maintaining pace, the ALJ found she has a moderate limitation. As to her cognitive issues, the ALJ found:

> The claimant alleges cognitive issues including difficulty remembering things and difficulty with concentration (4E). However, cognitive testing revealed a full scale IQ of 100 and her test performance was still in the average range relative to demographically matched controls (4F). Testing further revealed her language testing was normal and her speed processing was only mildly impaired (4F). Furthermore, the claimant did not show a pattern of memory impairment across tasks (4F). By her own reporting, she can cook without mistakes and stated that she can manage money without errors (4F). And while some decrease in the claimant's visual spatial processing as well as attention was noted, the cause was unclear and could be the result of lack of effort (7F/122-123). Lastly, notes dated January 6, 2022, indicate that the claimant recalled all 5 questions and was able to answer same without pre-reviewing (7F/109). Therefore, the undersigned finds the claimant has no more than moderate limitation in these domains.

AR 19.

The ALJ determined that in interacting with others and adapting or managing herself, Plaintiff has mild limitations. AR 19. Therefore, because her mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the paragraph B criteria were not satisfied and none of her impairments were severe.

The ALJ further found that the paragraph C criteria §§ 12.00G2b and 12.00G2c were not satisfied. AR 19-20. To satisfy the Paragraph C criteria, the claimant's mental disorder must be "serious and persistent"; "that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A2c; *see id.* § 12.00G2b, c (explaining the criteria of C1 and C2).[1] The ALJ found:

---

[1] There must be evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); and

8

> The claimant fails to meet these criteria because the claimant has not demonstrated a minimal capacity to adapt to changes in their environment nor attended therapy for two years. For instance, the claimant denies any issues with handling changes in routine (4E). The claimant reported the ability to perform her own personal care, like bathing, grooming, and dressing herself along with the ability to cook and manage money accurately as well (4F). In the record, the claimant required no inpatient treatment or psychological therapy, only taking Wellbutrin for her depression symptoms (6F/83). Lastly, she demonstrated normal judgment (2F29, 181; 6F/83).

AR 20.

At Step Four, the ALJ assessed Plaintiff's RFC after reviewing the record evidence and testimony, and then formulated Plaintiff's RFC. She concluded that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b)[2] with the additional limitations, described *supra*. AR 20. The ALJ found the with the limitations contained in the RFC, Plaintiff is capable of performing past relevant work. AR 25. Therefore, the ALJ did not proceed to Step Five.

## **ISSUES ON APPEAL**

On appeal, Plaintiff's sole argument is that in formulating her RFC, the ALJ erred by failing to analyze the purported medical opinions of neuropsychologist Gregory Thwaites, PhD. ECF 10 at 9-13. Specifically, she argues that the mental restrictions contradict Dr. Thwaites's opinions that Plaintiff had moderately impaired fine motor speed and psychomotor speed but no tremor or dyspraxia, "mildly impaired speed of processing for both auditory and visual information" "that could break down in more stimulating environments and distraction." AR 801. He also

---

> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (*see* 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). *See also* SSR 83-10 (the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday).

documented slowed processing and difficulties with new learning and subtle difficulties with verbal reasoning and problem solving. AR 801. According to Plaintiff, the ALJ erred in formulating the RFC by failing to evaluate or determine the persuasiveness of Dr. Thwaites's functional opinions.

## ANALYSIS

Because Plaintiff alleges cognitive problems arising from her physical conditions and hospitalizations, I do not summarize in great detail the long history of her physical impairments. I note that she has a history of gastrointestinal issues, including hospitalization for necrotizing pancreatitis. AR 593, 597, 630. She was admitted to the hospital after reporting to the emergency room on November 16, 2019, was advised she was at very high risk of multi-organ system failure, especially renal and respiratory failure in the immediate future. AR 598. She was for a time hospitalized in the intensive care unit and placed in a medically induced coma and was discharged in January 2020 after a necrosectomy. AR 528, 532, 503. Plaintiff was again admitted to the hospital on January 21, 2020. AR 499. She was treated with a feeding tube and antibiotics and was scheduled for an EGD with necrosectomy, which was performed on January 22, 2020 and again on January 29, 2020. AR 501-502, 532. A subsequent necrosectomy was performed on February 5, 2020; a previously-placed cystgastrostomy stent was removed and additional stents were inserted. AR 581. In November 2021, Plaintiff was diagnosed with exocrine pancreatic insufficiency and continued on pancreatic enzymes. AR 854.

After her discharge from the hospital in January 2020, Plaintiff reported cognitive problems, such as trouble remembering things, completing tasks, following instructions, understanding, and concentrating. AR 39, 43, 237, 242. She asked her employer to accommodate for her customer service job, which was denied. She began collecting long term care insurance.

AR 48, 798. In June 2020, that insurance was cancelled because her medical provider was not sending adequate information to the insurer, a decision Plaintiff challenged. AR 798.

As part of that insurance claim, on August 10, 2020, Plaintiff participated in a neurobehavioral status examination, and on September 9, 2020, neuropsychological testing which were overseen by Gregory Thwaites, PhD. R. 797. Plaintiff told Dr. Thwaites she had difficulty with prospective and short-term memory, understanding complex instructions, and had occasional word substitution. AR 798. Plaintiff said she was able to cook and manage money without making errors. AR 798. Plaintiff could drive without getting into accidents or receiving tickets, but she sometimes got lost. AR 798.

Dr. Thwaites noted that Plaintiff participated fully in his examination, and that the results were "believed to be an accurate depiction of her current abilities." AR 799. During his examination, Dr. Thwaites "did not observe any cognitive symptoms at the conversational level." AR 799. Testing revealed that Plaintiff's full-scale IQ was in the average range, with a score of 100, which Dr. Thwaites noted "likely underrepresent[ed] her longstanding intellectual functioning." AR 799. The majority of Plaintiff's testing results were normal, average, or even high average, including her perceptual reasoning, working memory, immediate and delayed visual recall, immediate verbal recall, verbal learning, short and long delayed recall, auditory-verbal recognition, non-verbal reasoning, and novel problem solving, among others. AR 799-800. Plaintiff's slightly abnormal test results included low average processing speed and immediate story recall; mildly impaired delayed recall and verbal reasoning; "subtle difficulties" in speed of processing visual and auditory information; and mild to moderately impaired verbal comprehension and fine motor speed. AR 799-800.

Dr. Thwaites concluded that Plaintiff "did not show a pattern of memory impairments across tasks" and that her mild impairment in speed of processing information could still allow "good sustained attention and higher-level attention and concentration" in the right conditions. AR 801. Dr. Thwaites noted that Plaintiff had not seen a neurologist or had any neuroimaging related to her cognitive complaints and recommended she undergo such workups, as well as testing for reversible dementia. AR 801. Dr. Thwaites wrote that "[a]t this point," Plaintiff could not return to work as a customer service representative and should be "off work" for the next ten weeks to allow her to get "more of a diagnostic workup" and attend weekly cognitive therapy sessions. AR 801. Dr. Thwaites was "hopeful" that those measures would allow Plaintiff to "reintegrate her back to her prior [job] position" and said he would meet with Plaintiff in ten weeks, after her completion of cognitive therapy and neurology consultations, to assess her progress and make "refined recommendations with respect to vocational reintegration." AR 801.

In October 2020 and June 2021, state agency psychologists Mary Rolison, Ph.D., and Thomas Stern, Ph.D., reviewed Plaintiff's records to assess her mental impairments and what workplace limitations, if any, may have been required to account for them. AR 65-67, 79-80. Both discussed Dr. Thwaites' evaluation, noting that most test measures were normal or mildly impaired and that Dr. Thwaite had made no formal diagnosis of a neurocognitive disorder. AR 66, 77, 79-80. Drs. Rolison and Stern both concluded that evidence did not establish that Plaintiff had a medically determinable mental impairment, and that Plaintiff did not require any mental functional workplace limitations. AR 66-67, 78-79. At both the initial and reconsideration stages of the administrative process, the agency determined that there was "no indication that there is a medical opinion from any medical source" concerning Plaintiff's physical or mental workplace limitations. AR 67, 81.

More than a year after Dr. Thwaites recommended cognitive therapy, Plaintiff had an initial evaluation with a cognitive and speech therapist on September 28, 2021. AR 992, 995. She reported memory issues, difficulty crocheting, and an inability to multitask. AR 995. Plaintiff said she used a whiteboard and planner to keep track of tasks, but also that she drove from her home in Greeley, Colorado, to Fountain, Colorado, once a week to care for her granddaughter for "6+ hours." AR 69, 995. Plaintiff reported that at the recommendation of her doctor, she took daily walks, cross-stitched, read, and played brain games like sudoku. AR 995. Upon evaluation, the therapist concluded that overall Plaintiff's "score was mild" but she had some "moderate deficits" in a single area, immediate memory. AR 996. The therapist indicated Plaintiff had the "potential to improve," but wrote that Plaintiff's motivation and commitment to therapy was only fair. AR 996.

While it was recommended that Plaintiff attend weekly cognitive therapy sessions for ten weeks, AR 996, the record reflects she only completed nine sessions by the end of February 2022; she had cancelled eight other sessions and failed to show up for three additional sessions without explanation. AR 992, 997, 999-1000, 1025, 1028, 1036, 1038, 1041, 1043-44, 1059, 1061, 1064, 1072, 1074. During the nine cognitive therapy sessions Plaintiff attended between September 2021 and February 2022, she never reported new problems and there was never a change to her treatment plan. AR 999, 1027, 1037, 1040, 1042-43, 1060-61, 1073. The therapy notes indicate that Plaintiff demonstrated some improvement as she was often able to remember the initial five therapy questions at subsequent sessions without pre-reviewing them. AR 1025, 1036, 1038, 1041, 1059.

In her findings, the ALJ addressed Dr. Thwaites' suggestion that Plaintiff be off work for ten weeks to engage in cognitive therapy, diagnosis, and treatment with a cognitive therapist for compensation training as follows:

13

> This recommendation/opinion is not persuasive evidence in support of disability under the Social Security Act. The recommendation/opinion suggests the claimant should take time off work to focus on treatment and [is] *not an opinion as to the claimant's ability to perform work related activities*. Even if it one was to accept this recommendation a statement of disability it would not be persuasive as that is an issue reserved to the Commissioner. Additionally, Dr. Thwaites said the claimant should not return to work for 10 weeks, which is much less than 12 months durational requirement under the Regulations and indicates that the claimant has good potential to improve with treatment. Finally, Dr. Thwaites' report does not contain function by function limitations. Therefore, the recommendation/opinion of Dr. Thwaites opinion is not found persuasive.

AR 22-23 (emphasis added).

As relevant here, under the new rules, "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions in the . . . ability to perform physical demands of work activities . . . including manipulative or postural functions[.]" 20 C.F.R. §§ 404.1513(a)(2)(i), 416.913(a)(2)(i)(A). The Commissioner argues that Dr. Thwaites' statement was not a "medical opinion" under this definition. Instead, the Commissioner asserts, the statement qualifies as "[o]ther medical evidence," because they are medical signs, laboratory findings, judgments about the nature and severity of Plaintiff's impairments, clinical findings, treatment prescribed, and/or prognosis. *See* 20 C.F.R. §§ 404.1513(a)(1); *C. L. P. v. Comm'r, Soc. Sec. Admin.*, No. 21-CV-02934-KLM, 2023 WL 2644080, at *5 (D. Colo. Mar. 27, 2023). I agree. While Dr. Thwaites generally discussed cognitive issues, he did not provide any specific opinion regarding how those impairment-related limitations or restrictions would affect Plaintiff's ability to perform the mental demands of work activities. Thus, even though Dr. Thwaites' statements suggest some work-related issues, the ALJ did not err by failing to evaluate Dr. Thwaites' statements as "medical opinion." I therefore conclude that the ALJ was not required to evaluate the medical-opinion factors as Plaintiff proposes.

14

Regardless, the ALJ discussed results of Plaintiff's cognitive testing, including some decrease in attention and other mild to moderate impairments. AR 19, 22-23 (citing AR 799-801, 1072-73). The ALJ also observed that Plaintiff had a moderately impaired immediate memory score in testing conducted by her cognitive therapist. AR 23 (citing AR 996). The ALJ also explained Dr. Thwaites's testing revealed, in large part, average or only mildly abnormal results, including a full-scale IQ of 100. AR 19, 22, 24 (citing AR 799-800). The ALJ considered that Plaintiff demonstrated no pattern of memory impairment across tasks during neuropsychological testing. AR 19, 22 (citing AR 801). She explained that both Dr. Thwaites and Plaintiff's cognitive therapist indicated Plaintiff had good rehabilitation potential, but that Plaintiff's motivation and commitment was described only as fair and that she frequently cancelled her cognitive therapy appointments. AR 23-24 (citing AR 801, 996, 999-1000, 1028, 1043-44, 1064, 1074). The ALJ also highlighted Plaintiff's admitted abilities, including cooking and managing money without errors, taking care of her own personal needs, driving (though sometimes getting lost), reading, cross-stitching, and doing brain games, which demonstrated "some ability to sustain attention and remember instructions." AR 19, 21-24 (citing AR 238, 240-41, 798).

The ALJ also discussed the findings of the state agency psychologists, Drs. Rolison and Stern, who both determined Plaintiff had no severe mental impairment. AR 24 (citing AR 65-67, 79-80). The ALJ explained that their findings (that Plaintiff does not have a medically determinable mental impairment) were not persuasive because the record demonstrated Plaintiff had mild to moderate limits in mental functioning. AR 24. Likewise, the ALJ discussed Dr. Thwaites's September 2020 statements and explained that they were not persuasive because they were not statements about Plaintiff's functional workplace limitations, were temporary in nature, and included issues reserved for the Commissioner. AR 22-23. The ALJ gave Plaintiff's

15

complaints some credit while also taking into consideration the largely cognitive testing results. In fashioning the Plaintiff's RFC, the ALJ ultimately limited Plaintiff to work where instructions could be learned in up to and including six months of on-the-job training. AR 20, 25.

Such evidence provides far more support from the ALJ's findings than required under the substantial-evidence standard of review.[3]

For all these reasons, after reviewing the entire record, I conclude that the ALJ's findings are based upon substantial evidence and inferences reasonably drawn therefrom, and she applied the appropriate formulation to the RFC.

## CONCLUSION

The ALJ did not err in determining that Plaintiff was not disabled November 15, 2019 through the date of her decision. The ALJ's decision that Plaintiff was not disabled is **affirmed**.

Dated at Denver, Colorado this 21st day of June, 2023.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[3] Plaintiff finally argues that remand for an immediate award of benefits is the appropriate remedy. The Supreme Court has clarified that courts are required, "except in rare circumstances, ... to remand to the agency for additional investigation or explanation." *I.N.S. v. Orlando-Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Payment is appropriate only when additional fact-finding would serve no purpose and the record "fully supports" that Plaintiff is disabled "as a matter of law." *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989). That is not the case here.